IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID DARIEL ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:11-cv-355-TFM |
| ) | [wo] |
| HUNTE DELIVERY SYSTEM, INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Now pending before this Court is Defendant's *Motion for Summary Judgment*, filed on September 27, 2011.

On November 10, 2009, Sarah Darelle Anderson ("Decedent") died in an automobile accident on Interstate Highway 85 between Mitylene and Waugh, Alabama. Plaintiff, David Dariel Anderson ("Anderson" or "Plaintiff"), as Administrator and Personal Representative of the Decedent, originally filed the instant action on November 23, 2011, in the Circuit Court of Montgomery County, Alabama alleging the following claims: 1) Negligence against Aaron Lewis ("Lewis") and Hunt Delivery System, Inc., Hunte Kennel Systems and Animal Care, Inc., ("Hunte") (collectively "Defendants"); 2) Wantonness against Lewis and Hunte; 3) Negligent Entrustment against Hunte; 4) Wanton Entrustment against Hunte; 5) Negligent Hiring, Training, Supervising and Monitoring against Hunte; and 6) Wanton Hiring, Training, Supervising and Monitoring against Hunte.  (Doc. 27, filed on October 5, 2011). Having removed the suit to this Court on May 9, 2011 (Doc. 1), Defendants now seek

summary judgment on the grounds that Plaintiff cannot establish negligence or wantonness because the duty to avoid is not applicable and/or because the Decedent was contributorily negligent. (Doc. 17, filed September 27, 2011). After careful consideration of the Motion for Summary Judgment filed by the Defendants (Doc. 17) arguments presented by parties through filings (Doc. 17., and Doc. 31., and accompanying evidentiary submissions), along with oral arguments on January 13, 2012, and the record as a whole, the Court finds that a genuine dispute of material facts exist regarding all claims of negligence and that the Defendants' Motion for Summary Judgment is due to be DENIED in part and GRANTED in part.

## I. JURISDICTION

The Court exercises subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 based upon the parties' diversity of citizenship and an amount in controversy exceeding $75,000.00, exclusive of interest and costs. Pursuant to the provisions of 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. (Docs. 9-10, filed June 3, 2011).

## II. SUMMARY JUDGEMENT STANDARD

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249. Only disputes about the material facts will preclude the granting of summary judgment and "disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *accord Greenberg v. Bell-South Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1277 (11th Cir. 2005) (quoting *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344-45 (11th Cir. 2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'").

Thus, the initial burden of proof rests on the movant. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554; *Gonzalez*, 161 F.3d at 1294. This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be

insufficient to permit the non-movant from carrying its burden of proof.  *Celotex*, 477 U.S. at 322-23; 106 S.Ct. at 2552-53.  The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial.  *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must designate specific facts showing there is a genuine dispute for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment.  *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (conclusory assertions in absence of supporting evidence are insufficient to withstand summary judgment). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original).  The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and may not rest upon the mere allegations or denials of the pleadings.  FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001).  If the evidence is merely colorable or is not significantly probative,

summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted). Thus, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586 106 S.Ct. at 1356 (citations omitted). A plaintiff must present evidence demonstrating that he can establish the basic elements of his claim. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Johnson*, 263 F.3d at 1242-43. Further, "all justifiable inferences are to be drawn in [that party's] favor." *Anderson*, 477 U.S. at 255; 106 S.Ct. at 2513; *see also McCormick*, 333 F.3d at 1243 (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment <u>must</u> be granted. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. In other words, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Id*. at 322, 106 S.Ct. at 2552.

### III.  FACTS AND PROCEDURAL HISTORY

The undisputed facts are that on the evening of November 10, 2009 the Decedent was the driver and her friend, Sarah Elizabeth Clayton, was the only passenger in Decedent's Chevy Equinox SUV, which was southbound on Interstate 85.  (*See* Doc. 27, filed October 5, 2011).  Heavy rain and low visibility made the Decedent hydroplane and lose control of her Chevy Equinox, which flipped at least once but perhaps multiple times. ("first accident") Ultimately the Equinox landed on its roof, with the front half of the vehicle on the left shoulder of the road while the back half of the vehicle remained, in part, in the left hand lane of traffic.  After the first accident, a commercial motor vehicle driven by Lewis and owned by Hunte, was traveling southbound on Interstate 85 and hit the back half of the decedent's vehicle ("second accident").  *Id*.

Plaintiff asserts that the Decedent survived the first accident only to be struck a fatal blow to her head, either directly or indirectly, by the Defendant in the second accident.  *Id*. Defendants assert that the Decedent was already dead at the time of the second accident. Defendants theorize that the Decedent broke her neck when she was ejected from her vehicle in the first accident. (Doc. 17).

### A.   **Deposition Testimony of Sara Elizabeth Clayton**

Clayton testified in her deposition that she and the decedent were Auburn University students at the time of the accidents and the two of them were close friends.  (Doc. 18, Ex. A, Clayton Dep. 10: 11-23).  Clayton and the Decedent first met in the Auburn Band and

were two members of the piccolo section. *Id*. at 10-12. Clayton and the Decedent were fast friends who were together most of their spare time. Id.

Shortly before the accident Clayton and Decedent left a Bible study at a friend's house when they decided to go to Krispy Kreme in Montgomery. Decedent was upset because she recently broke up with her boyfriend. *Id*. at 21-22. During the trip Clayton and Decedent discussed the breakup and were listening to music when the vehicle hit a puddle and began to hydroplane. *Id.* at 29, 41. Clayton remembers the car going up on two wheels, closing her eyes, hanging upside down, and then feeling wet grass under her feet. *Id*. She does not recall climbing out of the vehicle or how she got out of the vehicle. *Id*. at 44. Clayton said it was dark with few other vehicles on the road and that it had been raining most of the day. *Id.* at 33-34. Clayton cannot recall all the events from that evening. For example, she said she apparently called her parents multiple times from the side of the road but now has no memory of calling them or anyone else. *Id*. at 63.

**B.    Deposition Testimony of Aaron Eugene Lewis**

Lewis, and his brother Jason Lewis acting as his co-driver, were employed by Hunte at the time of the accident. (Doc. 18, Ex. B, Lewis Dep. 10: 9-13). Lewis was driving at the time of the accident while Jason was resting in the sleeper compartment of the truck. *Id*. at 15. Lewis said that he was traveling 55 to 60 mph in the left hand lane behind another commercial vehicle on a rain slick Interstate 85. *Id*. at 14-15. Lewis saw the driver of the truck ahead of him unexpectedly swerve into the right lane. Lewis was unable to completely

move over before his truck hit the Equinox. The driver of the first truck, George Donaldson, said to Lewis that the only reason he moved over to the right was because he was able to see Sarah Clayton on the side of the road with some kind of light either from a cell phone or flashlight. *Id*. at 17. Lewis said that he did not see the vehicle until he was right on top of it, probably ten feet or less, and that he never saw the decedent or anyone else for that matter with any kind of light. *Id.* at 25. Lewis said his truck did not strike the Decedent. *Id*. at 46. Lewis also said the driver of the other truck [Donaldson] said it had been Sarah Clayton, not the Decedent, that had been flashing some kind of light. *Id*. at 50-51. Lewis said that he knew and understood the requirements to obtain a commercial driver's license and the requirements to safely operate a large commercial vehicle as well as the duties he owed to other drivers. *Id*. at 84-91.

**C.     Other Evidence**

The Certificate of Death indicates that the cause of death was a car accident with ejection.   (Doc. 18, Ex. F). The State Troopers photos of the Decedent and both vehicles indicated that an accident did happen. (Doc. 19-24. Ex. G).

Plaintiff gave an affidavit by Chris Bloomberg, a consulting engineer specializing in the reconstruction of vehicular accidents, to the Court to consider. (Doc. 31, Ex. 3). Mr. Bloomberg purports that based on his knowledge, experience, analysis of evidence available to him and his reconstruction of the accident that had Lewis been paying adequate attention he would have been able to avoid the Decedent's vehicle and thereby avoid the second

accident that was the proximate cause of the Decedent's death. *Id.* Mr. Bloomberg analyzed data from the Bosch CDR report which captured data from the Equinox's electronic data recorder regarding deployment of the air-bags within the vehicle. Mr. Bloomberg opines that the hydroplaning incident did not cause the air-bags to deploy and that the CDR report proves the drivers' side seatbelt was buckled. *Id. Further,* Mr. Bloomberg opines that the second accident caused the air-bags to deploy and blood was left on the passenger side air-bag. *Id.* Mr. Bloomberg personally recovered samples of the blood on the passenger side air-bag. Genetic tests reveal the blood from the passenger side air-bag came from Sarah Clayton. *Id.* Additionally, the electronic data recorder indicates that the driver's seatbelt was buckled during the first accident and was un-buckled during the second accident. Mr. Bloomberg concludes that the Decedent climbed out of the vehicle; and thus she was the person who was waiving a light of some kind to warn oncoming traffic of the accident. *Id.* Mr. Bloomberg also reviewed the photographs of the vehicle driven by Lewis and determined that the imprint and damage to the windshield is consistent with a head strike. *Id.*

### IV.   ANALYSIS AND DISCUSSION

**A.   Negligence**

Counts I, III, and V of the complaint allege negligence on the part of the Defendants. (Doc. 27) The Alabama Supreme Court defines negligence as "the failure to do what a reasonably prudent person would have done under the same or similar circumstances." *Ford Motor Co. v. Burdeshaw*, 661 So.2d 236, 238 (Ala. 1995) (citing *Elba Wood Prods., Inc., v.*

*Brackin*, 356 So.2d 119, 122 (Ala. 1978)); *accord Thomas v. Jim Walter Homes, Inc.*, 918 F.Supp. 1498, 1502-03 (M.D.Ala. 1996).  Under a typical negligence claim the plaintiff must establish; "(1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or an injury; and (4) that the defendant's negligence was the actual and proximate cause of that loss or injury."  *Id*.  (citing *Lollar v. Poe*, 622 So.2d 902, 905 (Ala. 1993)); *accord Thomas*, 918 F.Supp. At 1503.

Plaintiff's negligence claims indicate that Lewis and/or Hunte not only breached a duty owed to the Decedent but that there were also violations of statutes governing the rules of the road.  (Doc. 27)  The Alabama Supreme Court test to establish "statutory" negligence requires a party to show: "(1) 'the party charged with negligent conduct [has] violated the statute;' (2) 'the statute was enacted to protect a class of persons which includes the litigant seeking to assert the statute;' (3) 'the injury was of a type contemplated by the statute;' and (4) 'the statutory violation proximately caused the injury.'"  *Edwards v. United States*, 552 F.Supp. 635, 638 (M.D.Ala. 1982) (quoting *Fox v. Bartholf*, 374 So.2d 294, 295-96 (Ala. 1979)).  "Generally, violation of a traffic ordinance or rule of the road constitutes negligence per se."  *Carroll v. Deaton, Inc.*, 555 So.2d 140, 141 (Ala. 1989).  However, some traffic ordinance violations only serve as prima facie evidence of negligence.  *See Consolidated Freightways, Inc., v Pacheco-Rivera*, 524 So.2d 346, 350 (Ala. 1988).  Specifically, "where the applicable Rule of the Road requires a judgment to be made on the part of the driver, the reasonable man standard applies and a violation of the statute is not per se negligence."  *Id.*

When considering a claim of negligence, the Court recognizes that Alabama follows the contributory negligence doctrine that must be taken into consideration wherein a "plaintiff cannot recover in a negligence action where the plaintiff's own negligence is shown to have proximately contributed to his damage, notwithstanding a showing of negligence on the part of the defendant." *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So.2d 839, 860 (Ala. 2002) (citing *Watters v. Bucyrus-Erie Co.*, 537 So.2d 24 (Ala.1989)). Contributory negligence can be found as a matter of law only when the facts of the case are such that all reasonable persons must reach the same conclusion. *Id*. However, normally the question of contributory negligence is one for the jury. *Id*. see also *Salter v. United States*, 880 F.Supp. 1524, 1533 (M.D.Ala. 1995) ("Unless the evidence bearing upon [contributory negligence] is entirely free of doubt and adverse inference, this question must be submitted to [a trier of fact]." (quoting *Lweis v. Sears, Roebuck & Co.*, 512 So.2d 712, 713 (Ala.1987)). When different inferences and conclusions can reasonably be drawn from the evidence, contributory negligence cannot be determined as a matter of law. *Id. See, e.g., Savage Indus., Inc., v. Duke*, 598 So.2d 856, 859 (Ala.1992); *American Furniture Galleries, Inc. V. McWane, Inc.*, 477 So.2d 369, 372 (Ala.1985).

Therefore, in order to succeed on a motion for summary judgment regarding the negligence claims, the Defendants "must show that the plaintiff put [herself] in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." *Hannah*, 840 So.2d at 860. "Where a plaintiff 'had knowledge of facts sufficient

to warn a man of ordinary sense of prudence of the danger to be encountered, and of the natural and probable consequences of his own conduct [],' plaintiff is 'guilty of negligence if he fails to exercise ordinary care to discover and avoid the danger and the injury.'" *Salter*, 880 F.Supp at 1533, (quoting *Alabama Power Co. V. Mosley*, 294 Ala. 394, 398, 318 So.2d 260, 263 (1975)). A finding of contributory negligence requires that "the plaintiff had knowledge of the danger and appreciated the danger under the circumstances and yet put himself in the way of harm." *Id*. (citing *Wilson v. Alabama Power Co.*, 495 So.2d 48, 49 (Ala.1986)).

Defendants argue that 1)there was no applicable duty to avoid hitting the unlit, overturned, and motionless vehicle, 2)the decedent was responsible for two-thirds of the speed differential of the two vehicles, and therefore, Plaintiff cannot prove the Defendants legally caused the decedent's death, and 3) that as a matter of law the decedent was guilty of contributory negligence. All arguments presented by the Defendants hinge on the fact that a reasonable jury must believe the evidence presented by the Defendants, in that Decedent was negligent in causing both the first and second accidents or was ejected from the vehicle in the first accident which was the proximate cause of the injuries that ultimately caused the Decedent's death. A reasonable jury could chose to believe the Defendants' evidence and find no negligence on the part of Lewis or Hunte.[1]

---

[1] Defendant makes extensive arguments regarding Lewis' duty to avoid as well as the details of Decedent's contributory negligence. Citing to *McBride v. Baggett Transp. Co.*, Defendants note that "a motorist may assume that others will not negligently park in

A jury could just as easily side with the Plaintiff and conclude the Defendants failed to exercise the degree of care that a reasonably prudent person would under the circumstances, that the Decedent survived the first accident, and died from the negligence of the Defendants.  There are substantial gaps in the evidence, such as a lack of measurements of the accident scene, the rain washing away some or all of any possible transferal evidence, and conflicting accounts of who was in the vehicle at the time of the second accident.  Such evidentiary deficiencies form the basis of a genuine dispute of material facts between the parties that may or may not show negligence or contributory negligence.  Therefore, Defendant's Motion for summary Judgment is due to be DENIED to the extent that it refers to the complaints of negligence.

---

the highway at night, when the vision of others may be obscured." 250 Ala. 488, 493, 35 So.2d 101, 105 (1948).  Plaintiff notes that *McBride* also states that even though motorist may assume that others will not negligently park on a highway at night, that "this will not absolve [a motorist] from using reasonable care under the circumstances." *Id*.  McBride goes on to state that "whether such driver was negligent is a question for the jury, especially when a car is illegally parked ahead of him without proper lights. *Id.*

     Provisions of the Alabama Code are cited by Defendants, specifically those regarding the rules of the road, in that drivers are to drive at reasonable and prudent speed under the circumstances, that drivers are prohibited from stopping and parking upon a highway, that signals should be used to warn vehicles to the rear, and that vehicles should be parked parallel to the direction of trave, not perpendicular to it.  Ala. Code 1975 § 32-5A-170, 32-5A-133(c), 32-5A-136(a), 32-5A-137(a)(1)(g), and 32-5A-138.

     Plaintiff directs the Courts attention to *McDaniel v. Frye*, 536 F.2d 625 (5thCir. 1976), wherein the Fifth Circuit Court of Appeals states that there is a duty to exercise reasonable care under all circumstances. *Id*. at 627-28.  (citing *McBride*, 250 Ala. at 493).

**B.    Wantonness**

Counts II, IV, and VI under the Plaintiff's complaint are based on wantonness of either Lewis or Hunte. (Doc. 27) Under Alabama law, "wantonness is the doing of some act or the omission to do some act with reckless indifference that such act or omission will likely or probably result in injury. *IMAC Energy, Inc. V. Tittle*, 590 So.2d 163, 169 (Ala. 1991); *accord Blizzard v. Food Giant Supermarkets*, Inc., 196 F.Supp.2d 1202, 1208 (M.S.Ala. 2002). The Code of Alabama defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala.Code § 6-11-20(b)(3). "Accordingly, to prove 'wantonness, one need not prove intentional conduct; however, proof of wantonness still requires evidence of a reckless or conscious disregard of the rights and safety of others." *Wal-Mart Stores, Inc., v. Thompson*, 726 So.2d 651, 654 (Ala. 1998). *see also Blizzard*, 196 F.Supp at 1209.

It is clear that wantonness is a distinct theory of liability from negligence and "not merely a higher degree of culpability than negligence." *Tolbert v. Tolber*, 903 So.2d 103, 115 (Ala. 2004) (quoting *NcNeil v. Munson S.S. Lines*, 184 Ala. 420, 423, 63 So. 992 (1993)). "Wantonness is not merely a higher degree of culpability, than negligence" but rather "[n]egligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." *Id.* In regards to the difference between wantonness and negligence "[i]t has been correctly stated that the two concepts are as 'unmixable as oil and water.'" *Id*. *see also Central Alabama Electric Cooperative v. Tapley*, 546 So.2d 371, 379

(Ala.1989) (clarifying that "[w]hat constitutes wanton misconduct depends upon the facts presented in each particular case" and that wantonness is not differing degrees of the same tort concept but qualitatively different concepts of actionable culpability.)

"The Eleventh Circuit has examined the Alabama wantonness standard at length." *Blizzard*, 196 F.Supp at 1209 (citing *Salter v. Westra*, 904 F.2d 1517 (11th Cir. 1990)). The Eleventh Circuit explained that even though knowledge of a condition and consciousness of a danger may be inferred from the facts of a situation, "negligence in not appreciating the dangerousness of the conditions is not wantonness." *Salter*, 904 F.2d at 1525. The Eleventh Circuit determined that "a jury may not find wantonness simply on the basis of a defendant's awareness that his actions, or failure to act, would entail more risks than not taking the action in question." *Blizzard*, 196 F.Supp at 1209.

In viewing the facts in a light most favorable to the Plaintiff, there is simply no evidence before this Court whereupon a reasonable jury could find a conscious or reckless disregard of the rights or safety of others. *Id.* Thus the Defendant's Motion for Summary Judgment is due to be GRANTED with respect to the Plaintiff's wantonness claims.

## V. CONCLUSION

Pursuant to the foregoing reasons, it is hereby ORDERED that the Motion for Summary Judgment, (Doc. 17), is GRANTED with respect to the claims for wantonness (Count II, Count IV, and Count VI). It is further ORDERED that the Motion for Summary

Judgment is DENIED with respect to the negligence claims (Count I, Count III, and Count V).  An appropriate judgment will be entered separately.

DONE this 2rd day of April, 2012.

                                      /s/ Terry F. Moorer
                                      TERRY F. MOORER
                                      UNITED STATES MAGISTRATE JUDGE