UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID DARIEL ANDERSON,       )
                             )
    Plaintiff,               )
                             )
v.                           )       CASE NO. 2:11-cv-355-TFM
                             )       [wo]
HUNTE DELIVERY SYSTEM, INC., et al.,  )
                             )
    Defendants.              )

## MEMORANDUM OPINION AND ORDER

Now pending before this Court is Defendant's *Daubert Motion* (Doc. 43, filed on November 21, 2011), which the Court construes as a motion to exclude the testimony of Plaintiff's expert witnesses based on non-compliance of the Daubert requirements.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff David Anderson ("Plaintiff" or "Anderson"), as Administrator and Personal Representative of the Decedent, initiated this action after a traffic accident between Sarah Anderson ("Decedent"), and Defendants Aaron Lewis ("Lewis"), Hunte Delivery System, Inc., Hunte Kennel Systems and Animal Care, Inc., ("Hunte") (collectively "Defendants"). On the evening of November 10, 2009 the Decedent was the driver and her friend, Sarah Elizabeth Clayton, was the only passenger in Decedent's Chevy Equinox SUV, which was southbound on Interstate 85.  (*See* Doc. 27, filed October 5, 2011).  Heavy rain and low visibility made the Decedent hydroplane and lose  control of her Chevy Equinox, which

flipped at least once but perhaps multiple times.  ("first accident")  Ultimately the Equinox landed on its roof, with the front half of the vehicle on the left shoulder of the road while the back half of the vehicle remained, in part, in the left hand lane of traffic.  After the first accident, a commercial motor vehicle driven by Lewis and owned by Hunte, was traveling southbound on Interstate 85 and hit the back half of the decedent's vehicle ("second accident").  *Id*.

Plaintiff asserts that the Decedent survived the first accident only to be struck a fatal blow to her head, either directly or indirectly, by the Defendant in the second accident.  *Id*. Defendants assert that the Decedent was already dead at the time of the second accident. Defendants theorize that the Decedent broke her neck when she was ejected from her vehicle in the first accident.  (Doc. 17).  The cause and time of Decedent's death is the primary dispute.

On November 21, 2011 Defendants filed a Daubert Motion (Doc. 43) wherein Defendants move the Court to "strike, disallow and exclude the proffered expert opinions of the Plaintiff's liability experts" (Doc. 43, at 2) because Plaintiffs fail to meet the two pronged test of reliability and relevance under Fed.R.Evid.702 and 703 as well as not complying with Fed.R.Evid 402 relevancy and 403 prejudicial, confusing or waste of time.  *See Daubert v. Merrill Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Joiner v. General Electric Company,* 78 F. 3d 524 (11th Cir. 1996) *cert. granted* 117 S.Ct. 1243 (March 17, 1997).  On January 12, 2012, Plaintiff's filed their Opposition to

Defendants' Daubert Motion and a hearing on the motion was held on January 13, 2012.

Upon consideration of the Defendants' motion, accompanying brief and oral argument of the

parties, this Court finds that the Defendant's Motion is due to be DENIED.

## II.   ISSUES

Defendants' clearest recitation of the issues to be considered by the Court is presented

in its conclusion.  Defendants raise five primary issues in their Daubert Motion, as follows:

> 1. Exclude the hearsay testimony of Jason R. Lewis and Aaron Lewis concerning what George Donaldson said;
> 2. Accept the missing pages from Jason R. Lewis' deposition together with additional windshield close-up photographs;
> [3]. Exclude all portions of the said experts' affidavits insofar as they selectively rely upon disputed witness statements;
> [4]. Exclude in their entirety the affidavits and disqualify the testimony of Dr. Riddick, Mr. Bloomberg, Dr. Strayer and Dr. Stopper;
> [5]. Render a summary judgment in favor of Defendants, dismissing this action, with prejudice, and taxing costs to Plaintiff.

(Doc. 43, at 36-37).

## III. DISCUSSION

**A.    Statements made by George Donaldson are properly considered at this point and the experts may properly rely upon all portions of their affidavits.**

Defendant seeks to exclude any statements made by George Donaldson, the

commercial truck driver who was in front of the Defendants and swerved to miss the

Decedent who then allegedly told Jason and Aaron Lewis that he missed the overturned

vehicle because he saw a girl flashing a light outside the vehicle.  Lewis depo. At 17:13-24;

23:20-24:5.  Defendant also seeks to exclude any portions of the experts statements wherein

they selectively relying upon disputed witness statements.  (Doc. 43, at 37).   While there are

potential hearsay issues with these statements as well as exceptions to the rule presented by

the Plaintiffs, the Court considers the statements for the purposes of the Daubert Motion.  In

that regard, FED. R. CIV. P. 702 permits testimony of an expert witness "[i]f scientific,

technical or other specialized knowledge will assist the trier of fact to understand the

evidence or to determine a fact in issue."   Experts may offer opinion testimony based on

facts or data personally observed, by information made aware to the expert, or even testify

on opinions based on evidence that would otherwise be inadmissible "[i]f experts in the

particular field would reasonably rely on those kinds of facts or data in forming an opinion

on the subject."  FED. R. CIV. P. 703.  FED. R. CIV. P. 702 states:

> A witness who is qualified as an expert, by knowledge, skill
> experience, training, or education may testify in the form of an opinion
> or otherwise if: (a) the expert's scientific, technical, or other specialized
> knowledge will help the trier of fact to understand the evidence or to
> determine a fact in issue; (b) the testimony is based on sufficient facts
> or data; (c) the testimony is the product of reliable principles and
> methods; and (d) the expert has reliably applied the principles and
> methods to the facts of the case.

Rule 702 compels the Court to "perform a 'gatekeeping' function concerning the

admissibility of expert testimony to ensure that speculative and unreliable opinions do not

reach the jury."  *Gilliam ex rel. Waldroup v. City of Prattville*, 667 F.Supp.2d 1276, 1294

(M.D.Ala. 2009) (citing *Daubert*, 509 U.S. at 589 n. 7, 113 S.Ct. at 2794).  "The judge's role

is to keep unreliable and irrelevant information from the jury because of its inability to assist

in the factual determinations, its potential to create confusion, and its lack of probative

value." *Id.* (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311–12 (11th Cir. 1999)).

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

FED. R. CIV. P. 703.

For the purposes of the Daubert Motion the Court finds that the statements made by Mr. Dondaldson are properly considered by the experts in assisting them in coming to any opinion they may reach.

### B.    The missing pages of deposition have been presented to all parties and this issue is therefore moot.

Defendants assert that there are four missing pages in the deposition of Jason R. Lewis and are concerned that the Plaintiff's expert witnesses did not use that information when forming their opinions.  *See* Doc. 43 at 8.  During the Daubert hearing, Plaintiff's apologized for the missing pages and asserted it was an error in their submission to the Court.  *See* Doc. 46.  The following day, after Defendants filed their *Daubert* motion, the Plaintiff corrected the error and submitted the four pages to the Court and the Defendants.  *See* Doc. 45 at Exhibit A.  Therefore, the Court finds the issue to be moot.

### C.    The experts Riddick, Bloomberg, and Stopper are proper under Daubert.

The defendants move to "strike, disallow and exclude," pursuant to *Daubert*, four of the Plaintiffs expert witnesses. *See* Doc. 43 at 2. The plaintiff plans to offer Leroy Riddick, M.D., a forensic pathologist; Chris Bloomberg, P.E., an accident reconstructionist; David Strayer, Ph.D., a psychologist; and David A. Stopper, a commercial trucking regulatory expert. *See* Doc. 43 at 1-2, 26, 30, 33, 35. Plaintiff withdrew Dr. Strayer as an expert witness at the time of the hearing and makes no rebuttal arguments on his behalf. All discussion and arguments from the Court hereby exclude Dr. Strayer. The plaintiff's experts have been retained to propose an alternative account as to how the accident occurred as well as how it could have been prevented. Defendants assert that the Plaintiff's experts should be excluded because their testimony does not meet the standards set forth in Fed. R. Evid. 702 or under the *Daubert* test.

Defendants contend that Plaintiff's expert witnesses "violate or ignore" Rule 702 because "their testimony is not based on sufficient facts or data, their testimony is not the product of reliable principles and methods, and they do not apply the principles and methods reliably to the facts of the case." *See* Doc. 43 at 3. Defendants claim a litany of faults in Plaintiff's experts, including but not limited to: analytical gaps, unaccepted accident reconstruction methods used, untested theories, theories that have not been subject to peer review or publication, no known rate of error, lack of expertise in large truck windshield-pedestrian collisions, testimony to a legal duty that is contrary to the law, and the lack of consideration given to the "sudden emergency doctrine." *See* Doc. 43 at 14-25. Throughout

their argument on each of these issues, Defendants continually cite to the superiority of their own evidence and theory over that of the Plaintiff as a basis to show that the Plaintiff's experts do not meet each factor of the *Daubert* standard. *Id.* For example, Defendants assertion of analytical gaps has no support other than the Defendant's own evaluation of how the accident occurred and how they do not find Plaintiff's expert's scenario to be plausible. *See* Doc. 43 at 14-17. The Eleventh Circuit has held that "[i]ssues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798. Defendants will have the opportunity to cross-examine all of the Plaintiff's expert witnesses in order to test their credibility and differing opinions in front of the jury. However, the Court finds the arguments that the experts should be excluded based solely on the Defendant's interpretation of the cause of the accident giving rise to this action is insufficient.

The Eleventh Circuit has held that expert testimony is only admissible under Rule 702 if it satisfies three requirements:

> (1) the expert witness is qualified to testify competently about the matters he intends to address; (2) the methodology used by the expert to reach his conclusion is sufficiently reliable as determined by the sort of inquiry mandated by *Daubert*; and (3) the testimony is relevant in that it assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence and to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004) (quoting *City of Tuscaloosa*
v. *Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1999)).  To establish a witness as an
expert, the proffering party can cite to the following traits: "knowledge, skill, experience,
training, or education." Fed. R. Evid. 702.  It must then be determined if the expert witness'
testimony is reliable by considering multiple factors such as:

> (1) whether the expert's methodology has been tested or is capable of being
> tested; (2) whether the technique has been subjected to peer review and
> publication; (3) the known and potential error rate of the methodology; and (4)
> whether the technique has been generally accepted in the proper scientific
> community.

*McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at
593–94, 113 S.Ct. at 2796-97).  This list of factors is not an exhaustive list nor are any of the
factors dispositive, and the court may "consider any additional factors that may advance its
Rule 702 analysis." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341
(11th Cir. 2003) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167,
143 L.Ed.2d 238 (1999)).  The trial court is granted "considerable leeway in deciding in a
particular case how to go about determining whether particular expert testimony is reliable."
*Kumho Tire Co*, 526 U.S. at 152.  Moreover, Daubert's relevance and reliability analysis
"applies not only to testimony based on 'scientific' knowledge, but also to testimony based
on 'technical' or 'other specialized' knowledge." *Kumho Tire Co*, 526 U.S. at 141.  The
court "*may* consider" one or more of the specific factors listed in *Daubert* but the actual test
is left "flexible." *Kumho Tire Co*, 526 U.S. at 141. (emphasis in original text).  "The burden

of establishing qualification, reliability, and helpfulness rests on the proponent of the expert witness...” *Frazier*, 387 F.3d at 1260.  Thus, the court’s screening must “ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation expert testimony.”  *Rink v. Cheminova, Inc.*, 400 F. 3d 1286, 1291 (11th Cir. 2005).

Similarly, the Defendants contend that none of the Plaintiff’s proffered expert witnesses considered the sudden emergency doctrine when forming their opinions.  The sudden emergency doctrine is a defense that can be asserted to lower the standard of care. *Montgomery v. United States*, No. 2:06-CV-880-WKW, 2008 WL 2559398 (M.D. Ala. June 23, 2008) (citing *Friedlander v. Hall*, 514 So.2d 914, 915 (Ala.1987).  “Application of the sudden emergency doctrine is a question for the fact finder.” *Id.*  The Court finds no affirmative duty upon expert witnesses to consider a legal doctrine that is to be raised by the Defendants as a defense.

For others, Defendants simply tell the Court which methodology or analysis they deem to be proper but fail to show how the particular methods or analyses used by the Plaintiff’s expert witness do not conform to the *Daubert* standard.  *See* Doc. 43 at 14-25.  There is a range in which different expert witnesses may reasonably differ.  *Kumho Tire Co.*, 526 U.S. at 153, 119 S.Ct. at 1177 (citing *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798).  Simply asserting that Plaintiff’s experts use methods that do not conform with Defendants’ experts does not make them faulty.  *Id.*  The Supreme Court has recognized that experts may

reasonably differ on issues of science, conclusions and that these differences should be admitted to aid the trier of fact in deciding the issues. *Kumho Tire Co.*, 526 U.S. at 153; *see also Globetti v. Sandoz Parm*. Cor., 111 F.Supp.2d 1174, 1177 (N.D.Ala. 2000) (stating that it is the role of the finder of fact, not the judge, to decide whether an expert's opinion is correct). After reviewing the Plaintiff's opposition brief, as well as considering their oral arguments on the motion during the *Daubert* hearing, the Court finds that the Plaintiff's experts base their opinion on sufficiently reliable methods.

Defendants also contend that Plaintiff's expert witnesses have chosen "inferior evidence" because it is "more distant and sketchy evidence" and further that Plaintiff's expert witnesses "ignore or misstate obvious evidence." *See* Doc. 43 at 4. Defendants go on to cite several pieces of evidence that they consider to be more reliable than that proffered by Plaintiff's expert witnesses. Once again, "[i]ssues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact." *Tippens*, 805 F.2d at 954. The time to question the evidence used by the Plaintiff's expert witnesses is at trial before the trier of fact.

Defendants also make the specific argument that they are facing undue prejudice due to spoliation of the body of the decedent without the opportunity to examine the right side of the decedent's face. *See* Doc. 43 at 9. This Court is unable to order steps that should have been taken in the preservation of the evidence be taken now after such a lengthy time. Additionally, the Court takes notice that at the hearing on this matter a large body of

preliminary evidence was presented, including photographs of all the vehicles involved, photographs of the scene, detailed photographs of the body, including articles of clothing worn by the decedent and her injuries.   Defendants argued to the Court that because it has always been their position that they are not liable for the death of the decedent, and they made such statements to the State Trooper on scene.  The State Trooper who arrived on scene did not perform any of they typical crime scene investigation or take measurements because Defendant denied any culpability in killing the deceased.  Now the Defendant wishes to hold the very fact that none of the crime scene measurements were taken against the Plaintiff when the Defendant is the one, by their own assertions, responsible for the lack of evidence.

Lastly, Defendants argue with the cumulative use of Plaintiff's experts there will be a confusion of the issues and a waste of time.  *See* Doc. 43 at 10-11.  Defendants failed to discuss how there will be a confusion of the issues other than by just making the assertion, so the Court finds no basis for this claim.  Defendants' waste of time assertion rests on the claim that all five of the experts being proffered by the Plaintiff chose to use "doubtful evidence," have come to "one unusual theory," and that the experts are located in multiple states making it financially difficult for the Defendants to depose them.  *See* Doc. 43 at 11.

"A trial court is entitled to make a decision on the admissibility of expert testimony without a hearing if the parties have presented a sufficient basis for the testimony."  *Rudd v. General Motors Corp.*, 127 F. Supp. 2d 1330, 1334 n. 3 (M.D. Ala. 2001).  However, this Court gave the Defendants an opportunity to show why the expert witnesses presented by the

Plaintiff should fail under the *Daubert* standard and Defendant was unable to convince the Court that the experts would detract in any way from the trier of fact being able to ultimately decide the case.   Plaintiff provides this Court, through both written arguments as well as those presented at the *Daubert* hearing, with a clear, detailed explanation of each individual proposed expert witness, their area of expertise, the length and breadth of the expert's experience in their specific fields, the means and analysis utilized by each expert, and a summary of what they are reasonably expected to testify to at trial.  *See e.g.*, (Doc. 51, at 10-19).   The Court finds that the Defendants primary argument is that they disagree with the Plaintiff's experts' opinions but fail to attack the methodology of the experts sufficiently to cause the Court to exclude them as expert witnesses.   The Defendants are free at trial to argue against any opinions and conclusions reached by opposing counsel's experts, as well as present evidence of their own theories, reinforcing the ruling of courts that "the weaknesses in the underpinnings of the expert's opinions go to its weight rather than its admissibility." *Jones v. Otis Elevator Co.*, 861 F. 2d 655, 663 (11th Cir. 1988).

Defendants filed a *Motion for Summary Judgment* (Doc. 17, filed on 09/27/11) separate from the current *Daubert Motion*.  The *Motion for Summary Judgment* was not argued directly to the Court in conjunction with the *Daubert Motion* and, thus, will not be considered in this opinion.  A separate opinion on the Motion for Summary Judgment has been previously entered by this Court.

## V.   CONCLUSION

Pursuant to the foregoing reasons, it is hereby ORDERED that the Daubert Motion, (Doc. 43), is DENIED.

DONE this 23rd day of April, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE